| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF NORTH CAROLINA, ex rel. SANTHOSH REDDY DEVARAPALLY, M.D., <br><br> Plaintiffs, <br><br> v. <br><br> FERNCREEK CARDIOLOGY, P.A.; MATTHEW A. DAKA, M.D.; SELVARATNAM SINNA, M.D.; and MANESH THOMAS, M.D., <br><br> Defendants. | MEMORANDUM OPINION |

At trial November 20, 2025, the court overruled plaintiffs' objection to witness Suriya Bandara Jayawardena, M.D. ("Jayawardena") providing testimony on medical necessity that he perceived in performing certain procedures. Upon its reconsideration the morning of November 21, 2025, the court sustained that part of plaintiffs' objection seeking to exclude this and related testimony lodged in the present time, i.e. what is thought now, not at the point in time when treatment was provided and disputed claims made. And it struck from the jury's consideration as that next trial day got underway, any corresponding portion of Jayawardena's disallowed testimony from the day before.

The court continued to allow, over plaintiffs' objection, individual defendants and treating physicians to testify as to their own personal observations, knowledge of facts, and associated beliefs and opinions at the time when the doctors were engaged in the course of the complained

about treatment and making claims therefor. The court memorializes herein its reasons for these rulings.

## BACKGROUND

A.  The False Claims Act

This matter arises under the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., and the North Carolina False Claims Act, N.C. Gen. Stat. § 1-605 et seq.[1] "The FCA (as relevant here) imposes liability on those who 'knowingly present a false or fraudulent claim for payment or approval.' Thus, two essential elements of an FCA violation are (1) the falsity of the claim and (2) the defendant's knowledge of the claim's falsity." United States ex rel. Schutte v. SuperValu Inc., 598 U.S. 739, 747 (2023) (quoting 31 U.S.C. § 3729(a)(1)(A)).

For purposes of the FCA, "Congress did not define what makes a claim 'false' or 'fraudulent.' But it is a settled principle of interpretation that, absent other indication, Congress intends to incorporate the well-settled meaning of the common-law terms it uses." Universal Health Servs., Inc. v. United States ex rel. Escobar, 579 U.S. 176, 187 (2016) (quotation omitted). "[R]epresentations that state the truth only so far as it goes, while omitting critical qualifying information [] can be actionable misrepresentations." Id. at 188. Therefore, "the implied certification theory can be a basis for liability, at least where two conditions are satisfied: first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." Id. at 190.

Under the FCA, a person acts "knowingly" if that person "has actual knowledge . . .acts in

---

[1] Where the North Carolina False Claims Act "shall be interpreted and construed so as to be consistent with the federal False Claims Act," N.C. Gen. Stat. § 1-616(c), the court focuses its analysis on the FCA.

deliberate ignorance of the truth . . . or acts in reckless disregard of the truth." 31 U.S.C. § 3729(b). "If a defendant knows that he lacks an honest belief in the statement's truth, that is often enough to establish scienter." Schutte, 598 U.S. at 752 (quotation omitted).

Medicare and Medicaid will reimburse healthcare providers only for items and services which are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. § 1395y(a)(1)(A). According to the United States Centers for Medicare and Medicaid Services ("CMS"), a service is "reasonable and necessary" if the service is:

- Safe and effective;
- Not experimental or investigational . . . ;
- Appropriate, including the duration and frequency that is considered appropriate for the . . . service, in terms of whether it is:
  - Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the patient's condition or to improve the function of a malformed body member;
  - Furnished in a setting appropriate to the patient's medical needs and condition;
  - Ordered and furnished by qualified personnel;
  - One that meets, but does not exceed, the patient's medical need; and
  - At least as beneficial as an existing and available medically appropriate alternative.

CMS Medicare Program Integrity Manual (CMS Pub. 100-08), § 13.5.4 (2019). Claims submitted to Medicare and Medicaid include a certification of compliance with this and other statutory and regulatory requirements.

Plaintiffs alleged that defendants Matthew A. Daka, M.D. ("Daka"), Selvaratnam Sinna, M.D. ("Sinna"), and Manesh Thomas, M.D. ("Thomas") (collectively, the "physician defendants") and Jayawardena, a physician defendant who settled with plaintiffs just before trial, each performed unnecessary medical procedures during the years 2014 to 2017, and that claims for these procedures were presented to Medicare and Medicaid, falsely certifying that the procedures

were medically necessary. Defendants contended that all the procedures were medically necessary.

Thus, the question of falsity turns on whether the procedures performed by Jayawardena and the physician defendants were in fact medically necessary. And the question of scienter turns on whether defendants knew at the time the claims were submitted that the procedures were not medically necessary.

B. Disputed Testimony

Plaintiffs called Jayawardena as a witness November 20, 2025. During cross-examination, plaintiffs raised a standing objection to any testimony from Jayawardena regarding medical necessity, arguing that the topic should be limited to discussion by experts.

The objection was first noted when defense counsel asked Jayawardena, "Based upon the review of the ABI, the ultrasound, and the results of your angiogram test, do you believe that the procedure that you performed on Ms. Connell was medically necessary?" to which Jayawardena responded, "Yes, ma'am."[2] Jayawardena also was asked, "And do you believe that when you submitted the claim for that procedure that it was medically necessary?" to which he responded, "Yes, ma'am." Regarding a different patient, defense counsel asked, "And the fact that you didn't find disease that could be intervened on during the performance of this procedure does that mean that this procedure was medically unnecessary?" to which Jayawardena responded, "No, ma'am."

Plaintiffs argued that Jayawardena was providing improper expert opinion testimony, and that if Jayawardena was permitted to continue doing so, plaintiffs' other lay witnesses, also doctors, Santhosh Reddy Devarapally, M.D. ("Devarapally") and Muhammad Marwali, M.D. ("Marwali") should be permitted to provide similar testimony. The court overruled plaintiffs'

---

[2] Quotations of testimony in this memorandum opinion are based upon the court's rough notes of testimony at trial on November 20 and 21, 2025, where an official transcript has not yet been filed.

4

objection with regard to Jayawardena because his testimony focused on his own patients and procedures, and Devarapally's and Marwali's proposed testimony as to medical necessity and the like regarded other physicians' patients and procedures. The court noted at sidebar as the day moved towards its close that the issue may arise again in the testimony of the physician defendants. Accordingly, the court directed the parties to return for hearing before the jury was seated the next day, supplementing their arguments on the issue with cases ruling on the extent of testimony a physician may offer regarding his own patients without being qualified as an expert.

Before the jury returned to the courtroom on the morning of November 21, 2025, the court noted a distinction in discussion with counsel between questions eliciting a witness's current opinion of medical necessity and ones asking whether the witness believed at the time of treatment that a procedure was medically necessary. There also was some discussion about defense counsel's need to be precise in framing associated questions to the pertinent time at issue.

**COURT'S DISCUSSION**

A.    Lay and Expert Testimony

"A witness may testify to a matter" when "the witness has personal knowledge of the matter." Fed. R. Evid. 602. However, opinion testimony based on "scientific, technical, or other specialized knowledge" must be given by a witness who qualifies as an expert. Fed. R. Evid. 702. "The purpose of experts in federal trials is not to decide technical questions; it is to bring the unfamiliar aspects of those questions within the jury's ken so that the jury can decide them." United States v. Elfenbein, 144 F.4th 551, 568 (4th Cir. 2025).

Each "party must disclose to the other parties the identity of any witness it may use at trial to present" expert testimony, and certain experts must prepare written reports. Fed. R. Civ. P. 26(a)(2)(A), (B). "The purpose of Rule 26(a) is to allow litigants to adequately prepare their cases

for trial and to avoid unfair surprise." Bresler v. Wilmington Trust Co., 855 F.3d 178, 190 (4th Cir. 2017) (quotation omitted). Accordingly, a party that fails to identify a witness as required by Rule 26(a) may not use that witness at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

District courts have "broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless." Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003). The following factors should guide the court in the exercise of that discretion:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

Id. District courts must "be alert to efforts to smuggle expert testimony into the case without complying with these requirements by characterizing it as lay testimony." 8A Charles A. Wright et al., Fed. Prac. & Proc. Civ. § 2031.1 (3d ed. 2020).

"Numerous courts have held that a physician is exempt from [Rule 26(a)(2)(B)'s] written report requirement . . . as to opinions formed during the course of treatments." Morris v. Bland, 666 Fed.Appx. 233, 239 (4th Cir. 2016); see also Fed. R. Civ. P. 26, Notes of Advisory Committee on 1993 Amendment ("A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report."). However, this does not exempt parties from the disclosure requirements of Rule 26(a)(2)(C) if the physician is expected to provide opinions based on his or her "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702(a).

B.      Other Courts' Rulings

This court finds instructive the ruling in United States ex rel. Lutz v. Berkeley Heartlab, Inc., No. 9:14-cv-230-RMG, 2017 WL 5957738 (D.S.C. Dec. 1, 2017). In Lutz, a medical

6

laboratory was alleged to have submitted claims for laboratory tests which were not medically necessary. See id. at *1. The plaintiffs moved to "exclude testimony from physician witnesses not disclosed as expert witnesses about the medical necessity of laboratory tests." Id. Those physician witnesses were not defendants, but they treated the patients for whom the laboratory tests at issue were performed. Id. at *2. Because the defendants had failed to comply with the disclosure requirements of Rule 26, the court initially granted plaintiffs' motion. Id. at *1.

When asked to reconsider and clarify, the court conducted a Southern States analysis and determined that the defendants' failure to comply with Rule 26's disclosure requirements was harmless. Id. at 3. In particular, the court found that although plaintiffs were "subject to some prejudice and surprise due to Defendants' failure to disclose the physicians in accordance with the rules, . . . that prejudice is mitigated by the fact that [the plaintiffs] had the opportunity to depose several of the physicians," and allowing the physicians to testify would not disrupt the trial. Id. Accordingly, the court held that the "[d]efendants may call the physician witnesses to testify about any opinions they formed during the course of treatment." Id. at *3 (emphasis added). The physician witnesses were permitted to "testify as fact witnesses about relevant issues that fall within their own personal knowledge and experience." Id. However, the physicians were not permitted to "rely on legal terms like 'medical necessity' because they were not disclosed as experts and have not produced expert reports." Id. at *4. The court noted that "the physicians' testimony may unavoidably toe the line between permissible opinions formed during the course of treatment and impermissible expert opinion testimony." Id.

Another court held that "[a] treating physician's testimony about a patient's diagnosis, prognosis, and future medical care is based upon 'scientific, technical, or other specialized knowledge.'" Springs ex rel. C.S. v. Waffle House, Inc., No. 3:18-cv-3516-JMC, 2021 WL

7

119303, at *2 (D.S.C. Jan. 13, 2021). Therefore, when two non-party physicians were not disclosed as experts, the physicians were limited "to providing testimony about their individual observations and treatment of [the plaintiff]. In other words, the treating physicians [were] permitted to testify to their observations, course of treatment, and diagnosis of [the plaintiff] <u>at the time they treated him</u>." Id. at *3 (emphasis added). The physicians were "not . . . allowed to provide opinions based on 'scientific, technical, or other specialized knowledge' that were formulated <u>after</u> they treated [the plaintiff]." Id. (emphasis added); <u>see also</u> <u>Stogsdill v. S.C. Dep't of Health & Human Servs.</u>, No. 3:12-0007-JFA, 2017 WL 3142497, at *15 (restricting non-party physicians to testimony about her "individual factual treatment of [plaintiff], as such treatment is documented in the medical records."); <u>Ingram v. ABC Supply Co., Inc.</u>, 2010 WL 233859, *3 (D.S.C. Jan. 4, 2010) (same).

More recently, another court agreed that a non-party "treating physician need not be designated as an expert and may testify as a lay witness to personal observations stemming from his course of treatment of a plaintiff." <u>Roop v. Desousa</u>, 660 F. Supp. 3d 477, 484 (E.D. Va. 2023). Similarly, where several non-party medical providers were not disclosed properly, a court allowed them "to testify as to their observations of Plaintiff's condition and their treatment of Plaintiff and <u>not</u> to any causes, diagnosis, prognosis, or future medical needs." <u>B.R. v. F.C.S.B.</u>, No. 1:19-cv-917 (RDA/WEF) 2024 WL 6043984, at *2 (E.D. Va. March 8, 2024) (emphasis in original).

C.   Application

The issue raised squarely by plaintiffs' objection is whether Jayawardena and, by implication, the physician defendants may testify about their opinions of the medical necessity of procedures they performed. The court concluded Jayawardena and the physician defendants may express the opinions they held at the time the procedures in question were performed and billed,

8

but these witnesses were not allowed to provide their current opinions regarding such procedures.

Understanding whether a particular procedure was medically necessary requires "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702(a). Accordingly, the parties designated non-party physicians to provide expert opinion testimony on the medical necessity of some 30 procedures collectively performed by Jayawardena and the physician defendants. Where neither Jayawardena nor the physician defendants were designated or qualified as experts, they were not allowed to testify as to their current opinions about whether any procedure was medically necessary.[3] See Fed. R. Civ. P. 37(c)(1).

In contrast, whether an individual had certain knowledge or held a particular opinion during the years 2014 to 2017 is not a "technical question" requiring expert testimony to come within the jury's understanding. Elfenbein, 144 F.4th at 568. What an individual thought is a question of fact, which goes to scienter. See Schutte, 598 U.S. at 749 ("The FCA's scienter element refers to [a defendant's] knowledge and subjective beliefs."). Here, the jury was asked to determine whether defendants knew at the time of billing that certain procedures were not medically necessary. In this context, a treating physician's testimony about his state of mind at the time of treatment, including the opinions he then held, is not expert opinion testimony subject to Rule 26(a)(2)'s disclosure requirements. See Moore v. McKibbon Bros., Inc., No. 5:98-cv-923-BO(2), 1999 WL 1940029, at *1 (E.D.N.C. Jan. 8, 1999) ("Treating physicians are really fact witnesses whose testimony flows from information they learned during the course of their treatment."). This is not an attempt by defendants "to smuggle expert testimony into the case." Wright et al., supra, § 2031.1. Therefore, the court did not prevent Jayawardena or any physician defendant from testifying as to his opinion during the course of treatment.

---

[3] Plaintiffs objected to Jayawardena's opinion only as to medical necessity. Thus, to the extent Jayawardena's testimony included other opinions, the court does not analyze their admissibility.

Furthermore, where three of the treating physicians in this matter are also defendants whose state of mind is directly at issue and where plaintiffs argue Jayawardena's state of mind can be imputed to defendant Ferncreek Cardiology, P.A., this court departed from the reasoning in Lutz that the non-party physician witnesses in that case could not "rely on legal terms like 'medical necessity.' " 2017 WL 5957738 at *4. Jayawardena and the physician defendants were allowed to testify as to the full extent of their knowledge and opinions at the time of treatment and billing. Cf. McLure v. Wilson, 292 F. 109, 112 (4th Cir. 1923) ("Where intention is a material inquiry, . . . a party may testify what his intention was."). Even though the physicians formed their earlier opinions with reliance on their specialized knowledge, the accuracy of those opinions is not determinative of the scienter question. Rather, the jury must determine whether Jayawardena and the physician defendants had "an honest belief" in the necessity of the procedures they performed. Schutte, 598 U.S. at 752. An average juror is capable of making such a determination without the aid of an expert.

For example, the following question of Jayawardena by defense counsel appropriately inquired into the witness's earlier state of mind: "Based upon all of the information that you had with respect to this patient back at that time, did you believe that the procedure you performed on her was medically necessary?" By judging the witness's credibility, along with other evidence, a juror can determine whether the witness's answer truthfully reflects his earlier knowledge.

Alternatively, to the extent a treating physicians' testimony as to his state of mind at the time of treatment and billing is expert opinion testimony, defendants' failure to disclose Jayawardena and the physician defendants as experts was harmless. See Fed R. Civ. P. 37(c)(1); Southern States, 318 F.3d at 596. The court perceives no surprise in such testimony where the question of the treating physicians' state of mind is an essential element of plaintiffs' claims, and

where plaintiffs had ample opportunity to depose Jayawardena and the physician defendants in discovery. Such limited, additional questions posed no disruption at trial.

In sum, the court determined Jayawardena and the physician defendants should be permitted to provide testimony about what they knew and what they thought at the relevant times, including "any opinions they formed during the course of treatment." Lutz, 2017 WL at *3. The physician witness performing a subject procedure for which claim was made could state whether he believed the procedure was medically necessary at the time he performed it and at the time he submitted or caused to be submitted a claim for that procedure. But Jayawardena's and the physician' defendants' current opinions of medical necessity were not allowed into the evidence.

## CONCLUSION

Based on the foregoing, the court sustained that part of plaintiffs' objection which took exception to Jayawardena's current opinion as to medical necessity. The court overruled that portion of the objection seeking to prohibit Jayawardena from testifying as to his medical necessity opinion at the time of treatment and billing. The same distinction was applied to defendants Daka, Sinna, and Thomas.

This the 12th day of December, 2025.

_____
LOUISE W. FLANAGAN
United States District Judge

11

Case 5:17-cv-00616-FL-RN    Document 256    Filed 12/12/25    Page 11 of 11